Turnpike Authority — Toll — Special Rates The Oklahoma Turnpike Authority can legally increase tolls on -the turnpike system. The Oklahoma Turnpike Authority has the power to classify tolls to cover all traffic; the tolls must be uniform within any reasonable class; and such Authority cannot reduce the rate of toll except through the use of tickets or privileges giving the holder thereof the right to travel at a certain rate for a limited number of trips or the right to travel an unlimited number of trips within a period of time, such reduced tolls to be based only upon frequency or volume. The Authority does not have the power or authority to discriminate against any group ar class or individual member thereof in fixing the amount of toll, rents or charge for the use of any part of the turnpike system. The Attorney General has had under consideration your request for our official opinion wherein you in effect ask: 1. Can the Oklahoma Turnpike Authority legally increase the tolls on the Turnpike system? 2. Does the Oklahoma Turnpike Authority have the power to extend discounts to the trucking industry and make no provision for discounts for passenger cars? Title 69 O.S. 1705 [69-1705] (1969), in part provides: "The Authority is hereby authorized and empowered: . . . . "(g) To fix and revise from time to time tolls for the use of any turnpike projects." Title 69 O.S. 1711 [69-1711] (1969), provides in pertinent part: "The Authority, subject to the provisions hereof, is hereby authorized to fix, revise, charge and collect tolls for the use of each turnpike project and the different parts or sections thereof, . . . . Such tolls, subject to the other restrictions hereof, shall be so fixed and adjusted in respect of the aggregate of tolls from the turnpike project or projects in connection with which the bonds of any issue shall have been issued as to provide a fund sufficient with other revenues, if any, to pay (a) the cost of maintaining. repairing, and operating such turnpike project or projects, and (b) the principal of and the interest of such bonds as the same shall become due and payable, and to create reserves for such purposes. . . ." It is therefore the opinion of the Attorney General that your first question be answered in the affirmative. The Oklahoma Turnpike Authority can legally increase tolls on the turnpike system. In fact, the Authority must fix and adjust the toll to provide a sufficient fund for operation, maintenance and repair of the turnpike system and to retire the principal and interest on bonds outstanding. Regarding your second question, we are not informed just what discounts, if any, are being extended to the trucking industry. We requested a copy of the rules and regulations which have been promulgated by the Oklahoma Turnpike Authority and were informed no rules and regulations had been adopted. Therefore our answer to your second question will be in the abstract. Title 69 O.S. 1711 [69-1711] (1969), provides in pertinent part: "The Authority shall not discriminate against any group or class of individual member thereof in fixing the amount of toll, rents or charge for the use of the turnpike project." Title 69 O.S. 1710 [69-1710] (1969), grants the Authority permission to enter into trust agreements by providing in part: "In the discretion of the Authority any bonds issued under the provisionS of this Article may be secured by a trust agreement by and between the Authority and a corporate trustee, which may be any trust company OF bank having the powers of a trust company within or without the State. Such trust agreement may pledge or assign the tolls and other revenues to be received from the project constructed by the use of the proceeds of the bonds, but shall not convey or mortgage any turnpike project or any part thereof." The bonds issued by the Turnpike Authority are secured by two trust agreements, one dated December 1, 1954, and the other dated January 1, 1966. Section 502 of each trust agreement contains the following language: "The Authority covenants that tolls will be classified in a reasonable way to cover all traffic, so that the tolls may be uniform in application to all traffic falling within any reasonable class regardless of the status or character of any person, firm or corporation participating in the traffic, that no reduced rate of toll will be allowed within any such class except through the use of commutation or other tickets or privileges based upon frequency or volume, and that no free vehicular passage will be permitted over the Turnpike or any part thereof, except to members, officers and employees of the Authority and law enforcement officers and agencies while in the discharge of their official duties and except to ambulances and the vehicles of any municipal fire department to the extent permitted by the Authority." (Emphasis Added) Also, note the relevant portion of Section 701 of the trust agreements: "The Authority covenants that it will promptly pay the principal of and the interest on every bond issued under the provisions of this Agreement. . . the principal, interest and premium are payable solely from tolls and other revenues derived from the ownership or operation of the Turnpike, which tolls and other revenues are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified." Thus, the Legislature authorized the bonds issued by the Oklahoma Turnpike Authority to be secured by a trust agreement which pledged all tolls and other revenues to the payment thereof. The Authority executed such a trust agreement whereby all tolls and other revenue were pledged to the payment of the bonds. In said trust agreement the Authority covenanted the tolls would be collected from all users of the turnpike except members, officers and employees of the Authority, law enforcement agencies, ambulances and municipal fire departments; that tolls would be reasonably classified, uniform in application within any reasonable class and that no reduced rate of toll would be allowed except through the use of commutation or other tickets or privileges based upon frequency or volume. The Authority, then, reserved in its trust agreement only the right to reduce tolls through the use of "commutation or other tickets." Black's Law Dictionary, Revised Fourth Edition, 1968, at page 351 defines a commutation ticket as: "A railroad ticket giving the holder the right to travel at a certain rate for a limited number of trips (or for an unlimited number of trips within a period of time) for a less amount than would be paid in the aggregate for so many separate trips." It is the opinion of the Attorney General the answer to your second question should be a qualified affirmative. The Oklahoma Turnpike Authority has the power to classify tolls to cover all traffic; the tolls must be uniform within any reasonable class; and such Authority cannot reduce the rate of toll except through the use of tickets or privileges giving the holder thereof the right to travel at a certain rate for a limited number of trips or the right to travel an unlimited number of trips within a period of time, such reduced tolls to be based only upon frequency or volume. The Authority does not have the power or authority to discriminate against any group or class or individual member thereof in fixing the amount of toll, rents or charge for the use of any part of the turnpike system. (W. J. Monroe)